## SETTLEMENT AGREEMENT AND GENERAL RELEASE

Avery Lee ("Lee"), Kyle Vargas ("Kyle"), Khori Vargas ("Khori"), Shawn Yarborough ("Yarborough")(Lee, Kyle, Khori and Yarborough may each be referred to as a "Plaintiff" and collectively "Plaintiffs") and Charles Hughes ("Hughes"), Scales 925 Atlanta, LLC ("Scales"), Scales 925 Atlanta Management, LLC ("Scales Management"), The Encore Group, LLC ("Encore"), Clifford Joseph Harris, Jr. ("Harris"), Clifford Joseph Harris, Jr. d/b/a the Royal Group LLC ("Royal")(Hughes, Scales, Scales Management, Encore, Harris and Royal may each be referred to as a "Defendant" and collectively referred to herein as "Defendants") (Plaintiffs and Defendants may be collectively referred to herein as the "Parties" or individually as a "Party") hereby agree upon a settlement of all issues involved herein, and as described in this Settlement Agreement and General Release ("Agreement"), this 18th day of January, 2018 ("Effective Date"), as follows:

## RECITALS

**WHEREAS**, Lee filed that certain civil action in the United States District Court for the Northern District of Georgia civil action number 1:15-cv-04127-ELR ("Lee Complaint"), in which he alleged that Scales violated the Fair Labor Standards Act ("FLSA") by failing to pay him wages and overtime for hours he worked for the Defendants (the "Wage Claim"). Lee also alleged that he was entitled to liquidated damages equal to the amount of unpaid wages (the "Liquidated Damages Claim"). Lee further alleged that he was retaliated against for engaging in protected activity under the FLSA ("Retaliation Claim");

**WHEREAS**, Lee was granted a Default Judgment against Scales in relation to his Complaint;

**WHEREAS**, Lee further filed that certain civil action in the United States District Court for the Northern District of Georgia civil action number 1:17-cv-01918-ELR ("Lee Second Complaint"), in which he sought to hold Hughes, Scales Management, Encore, Harris and Royal jointly and severally liable for the Default Judgment entered against Scales;

**WHEREAS**, Khori, Kyle and Yarborough filed that certain civil action in the United States District Court for the Northern District of Georgia civil action number 1:17-cv-01141-LMM ("Vargas Complaint"), in which they alleged that the Defendants violated the Fair Labor Standards Act ("FLSA") by failing to pay them wages and overtime for hours they worked for the Defendants (the "Wage Claim"). Khori, Kyle and Yarborough also alleged that they were entitled to liquidated damages equal to the amount of unpaid wages (the "Liquidated Damages Claim");

**WHEREAS**, the Defendants deny the allegations asserted by Plaintiffs as set forth in the Lee Complaint, Lee Second Complaint, and the Vargas Complaint. The Defendants believe that the Plaintiffs were properly compensated under the FLSA and, therefore, that the Plaintiffs are not entitled to overtime pay. The Defendants believe that they acted in good faith and, therefore, that the Plaintiffs are not entitled to liquidated damages;

**WHEREAS**, by this Agreement, the Parties desire to settle, fully and finally, the claims that could arise under the FLSA, the Lee Complaint, Lee Second Complaint, and the Vargas Complaint; and

**WHEREAS**, the Parties have also separately negotiated and reached an agreement on a general release of claims and limited confidentiality specifically related thereto.

**NOW, THEREFORE**, in consideration of the foregoing recitals and the mutual terms, covenants, and conditions hereinafter set forth, the Parties agree as follows:

**1. Settlement Amount for FLSA Claim.** As consideration for Plaintiffs' release of the Wage Claim, Liquidated Damages Claim, Retaliation Claim, and the satisfaction of the judgment, the Defendants will pay Plaintiffs and their attorneys the gross sum of $75,000.00 (the "FLSA Settlement Amount"). The FLSA Settlement Amount is being paid in settlement for Plaintiffs' claims as alleged in the Lee Complaint, the Lee Second Complaint, the Vargas Complaint, and their attorney's fees and costs.

The Parties agree that the FLSA Settlement Amount will be paid as follows:

a. The Defendants will pay Lee the gross amount of $8,500 as full compensation for Lee's Overtime claim. All necessary deductions and withholdings will be made from this payment, and this amount will be reported on a Form w-2 issued to Lee.

b. The Defendants will pay Lee the gross amount of $8,500 as full compensation for Lee's Liquidated Damages Claim. No withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to Lee.

c. The Defendants will pay Kyle the gross amount of $3,000 as full compensation for Kyle's Overtime claim. All necessary deductions and withholdings will be made from this payment, and this amount will be reported on a Form w-2 issued to Kyle.

d. The Defendants will pay Kyle the gross amount of $3,000 as full compensation for Kyle's Liquidated Damages Claim. No withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to Kyle.

e. The Defendants will pay Khori the gross amount of $3,000 as full compensation for Khori's Overtime claim. All necessary deductions and withholdings will be made from this payment, and this amount will be reported on a Form w-2 issued to Khori.

f. The Defendants will pay Khori the gross amount of $3,000 as full compensation for Khori's Liquidated Damages Claim. No withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to Khori.

g. The Defendants will pay Yarborough the gross amount of $1,000 as full compensation for Yarborough's Overtime claim. All necessary deductions and withholdings will be made from this payment, and this amount will be reported on a Form w-2 issued to Yarborough.



  h.  The Defendants will pay Yarborough the gross amount of $1,000 as full compensation for Yarborough's Liquidated Damages Claim. No withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to Yarborough.

  i.  Defendants will pay the Vaughn Law Firm, LLC the gross amount of $43,000 for attorney's fees. No deductions or withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to the Vaughn Law Firm, LLC.

The consideration set forth above is in full and complete settlement of Plaintiffs' claims under the FLSA as alleged in the Lee Complaint, Lee Second Complaint, and Vargas Complaint. Section 1(a) of the FLSA Settlement Amount shall be due and payable to Lee. Section 1(c) of the FLSA Settlement Amount shall be due and payable to Kyle. Section 1(e) of the FLSA Settlement Amount shall be due and payable to Khori. Section 1(g) of the FLSA Settlement Amount shall be due and payable to Yarborough. Section 1(b), 1(d), 1(f) 1(h) and1(i) of the FLSA Settlement Amount shall be due and payable to the Vaughn Law Firm, LLC client trust account. Plaintiffs and their counsel agree not to seek any additional attorneys' fees, costs or expenses from the Defendants in connection with the matters alleged in the Lee Complaint, Lee Second Complaint, Vargas Complaint, or which could have been alleged in a complaint.

  **2.**  **Release of Claims under the FLSA by Plaintiffs.** In consideration of the FLSA Settlement Amount described in Section 1 of this Agreement, each Plaintiff releases and discharges the Defendants from any liability for claims and damages allegedly arising under the FLSA, including the Overtime Claim, the Liquidated Damages Claim, and the Retaliation Claim.

  **3.**  **Settlement Amount for General Release and Limited Confidentiality.** As consideration for each Plaintiff's general release of claims against the Defendants in Section 6 of this Agreement and for the limited confidentiality of this Agreement in Section 9, the Defendants will pay each Plaintiff the gross sum of $1,000 (the "General Release Settlement Amount"). No withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to each Plaintiff.

The consideration set forth above is in full and complete settlement of each Plaintiff's general release of claims against the Defendants and limited confidentiality terms. The General Release Settlement Amount shall be due and payable to each Plaintiff in accordance with Section 4 of this Agreement.

  **4.**  **Payment Schedule.**
    a. Time for payment. The FLSA Settlement Amount and the General Release Settlement Amount will be paid within ten (10) calendar days of Court's approval of this Agreement.

    b. Allocation of payment among the Defendants. The total amount to be paid hereunder is $78,000, of which Harris has agreed to pay $39,000 and Hughes and Scales have agreed to pay $39,000. Harris shall submit to the Vaughn Law Firm the that sum of $39,000 as his portion of Sections 1(b), 1(d), 1(f), 1(h) and

1(i) of the FLSA Settlement Amount and the General Release Settlement Amount. Hughes shall submit or cause Scales to submit $39,000 as his portion of Sections 1(a), 1(c), 1(e), 1(g) and 1(i) of the FLSA Settlement Amount and the General Release Settlement Amount. Harris shall not be responsible for Hughes portion of the FLSA Settlement Amount or the General Release Settlement Amount, and Hughes shall not be responsible for Harris' portion of the FLSA Settlement Amount or General Release Settlement Amount.

5. **Tax Liability.** In paying the amount specified in Section 1 or Section 3, Defendants make no representation regarding the tax consequences or liability arising from said payments. Each Plaintiff understands and agrees that any and all tax liability that may be due or become due because of the payments referenced above is each Plaintiff's sole responsibility, and that each Plaintiff will pay any such taxes that may be due or become due. Each Plaintiff agrees to bear all tax consequences, if any, attendant upon the payment to each Plaintiff of the FLSA Settlement Amount and the General Release Settlement Amount. Each Plaintiff further agrees to hold Defendants harmless from and against all valid tax or tax withholding claims, amounts, interest, penalties, fines or assessments finally determined to be valid by any taxing authority or governmental agency with regard to the FLSA Settlement Amount and the General Release Settlement Amount. In the event any Defendant receives written notice that any claim or assessments for taxes, withholding obligations, penalties and/or interest arising out of this settlement are being or will be made against any Defendant, the Defendant shall promptly, after receipt of such written notice, notify the applicable Plaintiff by letter sent to counsel for Plaintiffs.

6. **General Release by Plaintiffs.** In consideration of the General Release Settlement Amount described in Section 3 of this Agreement, each Plaintiff (for himself, his agents, assigns, heirs, executors, and administrators) releases and discharges the Defendants (including its officers, owners, principals, members, employees, agents, representatives, attorneys, or officers, including without limitation Clay Evans, Quinton Morgan, and Carl D. Neal) from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, and expenses (including attorney fees and costs actually incurred), of any nature whatsoever, known or unknown, in law or equity which arose at any time from the beginning of time to the date each Plaintiff executes this Agreement. Without limiting the foregoing general release, each Plaintiff understands that this general release applies, but is not limited, to: all claims arising out of each Plaintiff's employment relationship with the Defendants, the cessation of that employment, the compensation or benefits payable in connection with that employment or the cessation of that employment and/or any other interaction with the Defendants, including, without limitation, (a) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq.*; (b) The Americans With Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 *et seq.*; (c) The Equal Pay Act, as amended, 29 U.S.C. § 206, *et seq.*; (d) The Lilly Ledbetter Fair Pay Act of 2009; (e) The Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601, *et seq.*; (f) The National Labor Relations Act, 29 U.S.C. § 151, *et seq.*; (g) The Employee Retirement Income Security Act, as amended, 29 U.S.C. § 1001 *et seq.*; (h) The Fair Credit Reporting Act, as amended, 15 U.S.C. § 1681 *et seq.*; (i) The Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq.*; (j) The Fair Labor Standards Act, as amended, 29 U.S.C. § 201, *et seq.* (the "FLSA"); (k) The Occupational Safety and Health Act, as amended, 29 U.S.C. § 651, *et seq.* (l) any agreement, representation, promise, understanding, policy, practice, plan, or potential entitlement (regardless of the source); (m) past or future wages, severance, compensation,

vacation pay, holiday pay, meal or rest breaks, overtime, benefits, bonuses, commissions, fringe benefits, reimbursement of expenses, or other forms of consideration, payment, or remuneration, except for claims to enforce payment of those sums explicitly identified in Section 3; (n) breach of contract; (o) intentional and/or negligent infliction of emotional distress; and (p) any other federal, state, or local law, whether arising or emanating from statute, executive order, regulation, code, common law, or other source, including, but not limited to, all actions sounding in tort, contract, and/or any doctrine of good faith and fair dealing.

Each Plaintiff further waives any and all rights to participate in a class or collective action alleging violations of any of the above laws, including those brought under the FLSA, and each Plaintiff further covenants and agrees not to accept, recover or receive any back pay, front pay, liquidated damages, other damages or any form of relief based upon any claims that have been asserted or could have been asserted or settled in a lawsuit that may arise out of, or in connection with, any other individual, class or administrative remedies pursued by any state or local governmental agency against Defendants.

This Agreement shall not apply to any provision of this Agreement that may be interpreted to waive, release, or extinguish any rights that, by express and unequivocal terms of law, may not under any circumstances be waived, released, or extinguished, including any other claim which cannot be released by private agreement.

**7. General Release by Defendants.** In consideration of the releases, promises and covenants provided for herein, each Defendant (for itself, its agents, assigns, successors, heirs, executors, and administrators) releases and discharges each Plaintiff from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, and expenses (including attorney fees and costs actually incurred), of any nature whatsoever, known or unknown, in law or equity which arose at any time from the beginning of time to the date each Plaintiff executes this Agreement, including but not limited those growing out of, resulting from, or connected in any way to Plaintiff's relationship and/or employment, and the termination thereof, with each Defendant. Without limiting the foregoing general release, this includes, but is not limited to, all claims based on constitutional, statutory, common law, or regulatory grounds, including but not limited to conversion, intentional infliction of emotional distress, negligence, breach of contract or implied covenant, deprivation of equity interest, shareholder rights, conversion, defamation, retaliation, fraud, misrepresentation, or promissory estoppel. This includes all claims for any relief, no matter how denominated, including, but not limited to compensatory damages, punitive damages, and attorneys' fees and costs.

**8. Non-disparagement.** Each Party agrees not to make any oral or written statements or reveal any information to any person, about the other Party which disparages or damages the other Party's reputation or business. The Defendants agree that if asked for a reference by any prospective employer and/or current employer of each Plaintiff, the Defendants will respond by only providing the dates each Plaintiff was employed with the Defendants, last position held and rate of compensation.

**9. Limited Confidentiality.** Except for the claims related to the FLSA, each Plaintiff agrees and promises that unless required by law to do so, each Plaintiff will not disclose the terms

of this Agreement or information about his involvement with Defendants, or make any oral or written statements or reveal any information to any person, company, agency or other entity, and if asked will say only that "the matter has been resolved satisfactorily." Notwithstanding the foregoing, nothing in this Section shall restrict Plaintiffs from discussing the terms of his employment with the Defendants with a potential employer.

**10. Representations, Warranties and Affirmations.** Each Plaintiff represents, warrants and affirms that each Plaintiff has no suits, claims, charges, complaints or demands of any kind whatsoever currently pending against Defendants with any local, state, or federal court or any governmental, administrative, investigative, civil rights or other agency or board. Each Plaintiff represents, affirms and warrants that each Plaintiff has not filed any charge, complaint or action against any Defendant with OSHA, the EEOC, the NLRB or any other Federal, State or local agency or board. This representation, affirmation, and warranty is a material inducement for Defendants to enter into this Agreement. In addition to all other rights and remedies the Defendants may have at law or in equity, if any Plaintiff's representation, affirmation, and warranty is false, the applicable Plaintiff will return to Defendants all consideration paid pursuant to Section 2 and Section 3 of this Agreement. Each Plaintiff further represents and affirms as a material term of this Agreement that each Plaintiff has been paid and/or received all leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits to which he may be entitled and that no other leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits are due to him, except as provided for in this Agreement.

**11. Disclaimer of Liability.** Nothing in this Agreement shall constitute or be construed as an admission of liability or wrongdoing by the either Party. Each Party expressly denies that it has done anything wrong or unlawful.

**12. Remedies for Breach.** Should any Party prevail in any action brought against the other to enforce the terms of this Agreement, or to recover damages for breach of this Agreement, or to collect the FLSA Settlement Amount or the General Release Settlement Amount to be paid by any Defendant under this Agreement, the prevailing Party shall be entitled to recover from the other his or its reasonable attorneys' fees incurred in the action, along with costs and damages. In addition to all other rights and remedies Defendants may have at law or in equity, if any Plaintiff files a civil action or regulatory claim against any Defendant alleging any of the claims released herein, the Plaintiff violating this Section will return to Defendants all consideration paid pursuant to Section 2 and Section 3 of this Agreement. Each Party further understands and acknowledges that the Confidentiality (Section 9), Nondisparagement (Section 8) and the payment schedule of the FLSA Settlement Amount and General Release (Section 4) provisions are material terms of the Agreement and constitutes consideration of the Agreement. Each Party acknowledges and agrees that the nonbreaching Party would be irreparably harmed if the breaching Party breaches either of these provisions and that the amount of damages that would result from such a violation may be difficult or impossible to ascertain. Therefore, the Parties agree that, if a Party breaches either the provision of this Agreement, the breaching party shall be obligated to pay the nonbreaching party One Thousand Dollars ($1,000.00) for each proven breach as liquidated damages, and not as a penalty. This remedy is in addition to any other remedies provided for in law or equity or provided for herein.

**13. Integration.** This written Agreement contains the entire agreement of the Parties regarding the settlement of Plaintiffs' claims under the FLSA and the Parties' general release of claims. This Agreement may not be changed orally but only by an agreement in writing signed by the Party against whom enforcement of any waiver, change, modification, extension, or discharge is sought. The Parties acknowledge that each Party has not relied upon any representations or promises except as set forth herein and has not relied upon the other Party or its counsel for any advice on or interpretation of the legal or tax implications of this Agreement. By signing below, the Parties acknowledge receipt of a copy of this Agreement. Each Party has been advised to seek the advice of a Certified Public Accountant or other tax advisor to insure and review the Agreement and to advise each Party concerning how all of the terms and conditions set forth therein may affect their future tax liabilities. The Parties hereto hereby acknowledge and agree that each has had the opportunity to retain its, his or her own Certified Public Accountants, tax advisor or tax attorney with reference to the tax implications of this Agreement. Further, the Parties hereby acknowledge that they have not relied upon the tax implications of this Agreement. Further, the Parties acknowledge and agree that their signatures to this Agreement serve as the acknowledgment that they have read this particular paragraph and that they have had the opportunity to seek independent advice. All Parties acknowledge that its, his or her attorney provided them no tax advice and they have not relied on any representations of their lawyer in providing tax advice.

**14. Severability.** Should any clause of this Agreement be found void by a court of law, with the exception of the requirement that the Defendants pay Plaintiffs and their counsel the Settlement Amount set forth in Section 1 and the General Release Settlement Amount set forth in Section 3, that fact shall not impair the remainder of this Agreement.

**15. Governing Law.** This Agreement shall be interpreted and enforced in accordance with the laws of the State of Georgia. The parties agree to and hereby do submit to jurisdiction before any state or federal court of record in Fulton County, Georgia, subject to the right, if any, of either party to attempt to remove any claim arising under this Agreement to a United States District Court if said Court has jurisdiction.

**16. Construction of Agreement.** The Parties hereby confirm and agree that this Agreement is the result of negotiation and compromise and that in interpreting this Agreement neither party shall be considered to be the drafter of the document, and that the language should not be strictly construed against either party. Instead, the language of the Agreement should be interpreted in a manner consistent with the ordinary and reasonable meaning of the words used.

**17. Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, executors, administrators, officers, directors, shareholders, employees, agents, parent companies, subsidiaries, divisions, affiliates, related companies, successors, and assigns.

**18. Expenses.** The Parties shall pay their own expenses, including, without limitation, any attorney fees, mediation fees, court costs, pleading preparation, legal and expert fees, or other expenses incurred for the negotiation, preparation, and execution of this Agreement, with the exception of the payment of the FLSA Settlement Amount and the General Release Settlement Amount by the Defendants to Plaintiffs and their counsel referenced in Section 1.

19. **Counterparts.** This Agreement may be executed in identical counterparts, each of which shall constitute an original of this Agreement. Signatures of the Parties may be exchanged by facsimile or electronically (e.g. Pdf) and same shall be treated as an original.

20. **Understanding and Voluntariness.** EACH PARTY REPRESENTS AND AGREES THAT THE PARTY HAS DISCUSSED ALL ASPECTS OF THIS AGREEMENT WITH THE PARTY'S COUNSEL, THE PARTY HAS CAREFULLY READ AND FULLY UNDERSTANDS ALL OF THE PROVISIONS OF THIS AGREEMENT, AND THAT THE PARTY IS VOLUNTARILY ENTERING INTO THIS AGREEMENT.

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be executed by their duly authorized representatives, and have executed and delivered this Agreement, as an agreement under seal, effective as of the Effective Date.

**Avery Lee**

_____
Signature

Dated: _____

**Kyle Vargas**

_____
Signature

Dated: _____

**Khori Vargas**

_____
Signature

Dated: _____

**Shawn Yarborough**

_____/s/ Shawn Yarborough_____
Signature

Dated: 1/18/2017

**Scales 925 Atlanta, LLC**

_____
Signature

By: _____

Title: _____

Dated: _____

**Scales 925 Atlanta Management, LLC**

_____
Signature

By: _____

Title: _____

Dated: _____

19. **Counterparts.** This Agreement may be executed in identical counterparts, each of which shall constitute an original of this Agreement. Signatures of the Parties may be exchanged by facsimile or electronically (e.g. Pdf) and same shall be treated as an original.

20. **Understanding and Voluntariness.** EACH PARTY REPRESENTS AND AGREES THAT THE PARTY HAS DISCUSSED ALL ASPECTS OF THIS AGREEMENT WITH THE PARTY'S COUNSEL, THE PARTY HAS CAREFULLY READ AND FULLY UNDERSTANDS ALL OF THE PROVISIONS OF THIS AGREEMENT, AND THAT THE PARTY IS VOLUNTARILY ENTERING INTO THIS AGREEMENT.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed by their duly authorized representatives, and have executed and delivered this Agreement, as an agreement under seal, effective as of the Effective Date.

**Avery Lee**

_____
Signature

Dated: _____

**Kyle Vargas**

_/s/ Kyle Vargas_____
Signature

Dated: _1-18-18_____

**Khori Vargas**

_/s/ Khori Vargas_____
Signature

Dated: _1-18-2018_____

**Shawn Yarborough**

_____
Signature

Dated: _____

**Scales 925 Atlanta, LLC**

_____
Signature

By: _____

Title: _____

Dated: _____

**Scales 925 Atlanta Management, LLC**

_____
Signature

By: _____

Title: _____

Dated: _____

19. **Counterparts.** This Agreement may be executed in identical counterparts, each of which shall constitute an original of this Agreement. Signatures of the Parties may be exchanged by facsimile or electronically (e.g. Pdf) and same shall be treated as an original.

20. **Understanding and Voluntariness.** EACH PARTY REPRESENTS AND AGREES THAT THE PARTY HAS DISCUSSED ALL ASPECTS OF THIS AGREEMENT WITH THE PARTY'S COUNSEL, THE PARTY HAS CAREFULLY READ AND FULLY UNDERSTANDS ALL OF THE PROVISIONS OF THIS AGREEMENT, AND THAT THE PARTY IS VOLUNTARILY ENTERING INTO THIS AGREEMENT.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed by their duly authorized representatives, and have executed and delivered this Agreement, as an agreement under seal, effective as of the Effective Date.

**Avery Lee**

_____
Signature

Dated: 1/18/18

**Kyle Vargas**

_____
Signature

Dated: _____

**Khori Vargas**

_____
Signature

Dated: _____

**Shawn Yarborough**

_____
Signature

Dated: _____

**Scales 925 Atlanta, LLC**

_____
Signature

By: Deirdre M. Stephens-Johnson

Title: Atty

Dated: 1/19/18

**Scales 925 Atlanta Management, LLC**

_____
Signature

By: Deirdre M. Stephens-Johnson

Title: Atty

Dated: 1/19/18

**The Encore Group, LLC**

_____
Signature

Deirdre M. Stephens-Johnson
Attorney In Fact
_____
By:

_____
Title: Attorney

Dated: 19 January 2018

**Charles Hughes**

_____
Signature

Dated: 19 January 2018

**Clifford Joseph Harris, Jr.**

_____
Signature (by his counsel Albert A. Chapar, Jr. as agent)

Dated: 18 January 2018

**Clifford Joseph Harris, Jr.**
**d/b/a The Royal Group, LLC**

_____
Signature (by his counsel Albert A. Chapar, Jr. as agent).

Dated: 18 January 2018